#### AND

## *THE CORRECTION OF ERRORS*

##### OF THE

### STATE OF NEW-YORK;

##### IN APRIL, 1820.

—◁+◁—

BENJAMIN S. ANDERSON and JOHN ANDERSON, Appellants,
*against*
ROBERT ROBERTS and SAMUEL BOYD, Respondents.

APPEAL from the Court of Chancery. The bill stated, that *Robert Roberts*, being a creditor of *William Griffith*, with a view to secure some part of his debt, on the 22d *March*, 1810, purchased a bond and mortgage executed by *Griffith* to *Aaron Lyon;* the mortgage being on part of a lot of ground in the village of *Newburgh*, and was registered on the 29th of *May*, 1806. *Roberts* having paid *L.* the consideration of 214 dollars and 25 cents, and received an assignment of the bond and mortgage, took possession of the mortgaged premises, together with the residue of the lot, and the house thereon, and let the same to *Hector M'Leod*, who entered into possession thereof, as his tenant. *Benjamin Taylor*, who had obtained a judgment

> The *proviso* in the *sixth* section of the act to prevent frauds. (sess 10 c. 44. 1 *N. R. L.* 75.) applies to both the *second* section of the act, or 13 *Eliz* ch. 5: and to the *third* section of the same, or 27 *Eliz.* ch 4; and that whether the conveyance is from the fraudulent grantor, or the fraudulent grantee. The same rule of construction is applied to both sections or statutes. And there is no difference between a deed to defraud subsequent creditors, and a deed to defraud subsequent purchasers

A *bona fide* purchaser, therefore, for a valuable consideration, without notice of the fraud, whether he purchases from the fraudulent grantor or the fraudulent grantee, is protected by the statute; such fraudulent conveyances not being absolutely void, but voidable only at the instance of the party aggrieved. The purchase from the fraudulent grantee, however, must be prior in time to a *bona fide* purchase from the fraudulent grantor, or to a sale on execution, at the suit of a creditor.

Where a bill is in the nature of a bill for a new trial at law, equity will not sustain it.

against *G.* on the 14th of *May*, 1808, for 128 dollars and 10 cents, issued an execution thereon, by virtue of which the premises were sold by the sheriff, at public auction, to the highest bidder, *Samuel Boyd*, for thirty dollars, and the sheriff executed a deed of the premises, accordingly, to *B.*, who made the purchase merely as trustee for the respondent, *Roberts.* The bill further stated, that *G.* being indebted to several creditors, and there being suits pending against him, in order to defraud his other creditors, did, on the 20th of *January*, 1820, convey the mortgaged premises to one *Sarah Johnson,* for the nominal consideration of 2,000 dollars, and, by another deed, conveyed to her the other part of the lot for the nominal consideration of 1,500 dollars. The bill charged that these conveyances were collusive and fraudulent; and that *S. J.* never having paid any consideration for them, she was a mere trustee for *W. G.*; and that the land was, afterwards, re-conveyed to him, before *Isaac Clason* obtained his judgment against *Sarah Johnson;* and that he continued to possess and enjoy the property as his own after those conveyances. That, in 1811, the defendants pretending to claim the land under a deed from the sheriff, on a sale of the premises, the 1st of *January,* 1810, by virtue of an execution on the judgment in favour of *Isaac Clason* against *S. Johnson,* brought an action of ejectment against *M'Leod,* and obtained a verdict against him, on producing the deed from the sheriff, and proving that on the 1st of *May*, 1810, *M'Leod* took a lease from the appellants. The bill charged that the lease so taken by *M.* from the appellants, being after he became tenant to the respondents, was void, and the attornment fraudulent. The bill prayed that the conveyances from *W. G.* to *S. J.* might be declared fraudulent and void, and that the sheriff's deed to the appelants, and all other deeds from *S. J.*, or any grantees under her, to the appellants, of the premises, or any parts thereof, might be declared fraudulent and void, and be delivered up to be cancelled; and that all proper parties might release to the respondent *R.* and for an injunction, &c.

The defendants, in their answer, denied all knowledge of the claim of the respondents against *G.* They admitted the mortgage from *G.* to *Lyons,* but alleged that they were

ignorant of the assignment to *Roberts*, or of any lease from him to *M'Leod*; and denied that *Roberts* had any possession, legal or constructive, of the premises. They averred, that there was no judgment against *G.* when he conveyed the premises *to Sarah Johnson*. That *B. S. Anderson*, and *S. B.* and *N. Boyd*, were present at the sale by the sheriff, under *Taylor's* judgment; and that they were informed by *Anderson* of his purchase under *Clason's* judgment; that the judgment of *Clason* was obtained against *S. J.* the 15th of *May*, 1809, for 346 dollars and 88 cents; and on the 13th of *December*, 1809, the premises were sold under an execution on that judgment, subject to all prior incumbrances; *B. Anderson*, appellant, became the purchaser, for one dollar and fifty cents, and his father, *J. A.*, became jointly concerned with him in the purchase. *S. J.* had executed a mortgage of the premises to *D. Stansbury*, for 496 dollars and 88 cents; and *W. King* had some equitable claim on the property; and the appellants agreed to pay *S. J.* 167 dollars, and take a release, or quit-claim, of her right; to discharge *Stansbury's* mortgage, and pay *W. K.* 300 dollars for his lien, which was accordingly done, on the 21st of *March*, 1810. The appellants alleged that they had not heard of the claim of the respondents, until after they had paid all these sums of money, and denied all notice, and every charge of fraud or collusion; and claimed to hold, as *bona fide* purchasers, without notice. That they tendered to the respondent, *Roberts*, 250 dollars, the amount of the mortgage to him, &c.

A *replication* was put in, and witnesses examined, and proofs taken by the parties. The material points proved, appear in the opinion of the Court.

The cause was brought to a hearing in the Court of Chancery, in *June*, 1818. The Chancellor decreed that the two deeds to *Sarah Johnson* were fraudulent and void, and that the plaintiffs ought to be quieted against any claims on the part of the defendants under those deeds, and that a perpetual injunction be issued for that purpose.

Kent

THE CHANCELLOR assigned his reasons for the decree. (*Vide S. C, 3 Johns. Ch. Rep.* 371.)

*Mitchill,* for the appellants. 1. The appellants had a com-plete title under the sheriff's sale ; and if *S. Johnson* had any title, it was acquired by the appellants, for a valuable consideration. The tender of the money due on the mort-gage, was equivalent to a payment; and the *lien* was there-by destroyed. (*Cro. James,* 244. *Co. Litt.* 207, 208, 209.) On this title, the action of ejectment was brought against *M'Leod :* and the *first* objection to the decree of the Court of Chancery is, that *M'Leod* should have been made a par-ty. The rule is well settled, that all persons interested should be made parties. (*Malin* v. *Malin,* 2 *Johns. Ch. Rep.* 238. *Coop. Equ. Pl.* 33.) Now, *M'Leod was* interested, for there had been a recovery against him in ejectment, and also for *costs,* in the Supreme Court. This objection, either on demurrer, or at the hearing, is fatal.

(SPENCER, Ch. J. Was this objection made at the hearing?)

It was stated in the *answer,* which was read at the hear-ing. *M'Leod* was the only person interested as to the mesne profits. The injunction was for quieting the posses-sion. (1 *Vernon,* 156.)

(VAN NESS, J. It has been settled by this Court, that matters not suggested at the hearing, nor decided upon by the Chancellor, cannot be made the ground of error here.)

2. There is no equity on the part of the respondents. The matters for which they seek relief are properly cog-nizable in a Court of law. *Roberts* alleges merely that he shall be put to great expense to recover at law. He avers that *M'Leod* was his tenant. He might, then, have been made a co-defendant in the action of ejectment, and have set up his claim as a defence. If *Roberts* had no right to come into a Court of equity, the other respondent had not. This is, in effect, an attempt to get a new trial in a Court of equity, on the same grounds which they might have set up as a defence at law.

3. The depositions of *Sarah Johnson,* and *Thomas Allen,* ought not to have been rejected by the Chancellor. S. J. was not interested ; but if she was, she or her heir ought to

have been made a party to the suit. No action for a *de-* IN ERROR.<br>•••••••<br>ALBANY,<br>April, 1820.
*ceit* would lie ; for the deceit and the *scienter*, both of
which are essential to the action, could not be alleged.
And if there had been covenants, an action of covenant ANDERSON<br>v.<br>ROBERTS.
would not lie. The deposition of *Allen* was taken *de bene*
*esse*, at law, and he was dead when it was offered. When
it was taken, *Roberts* was his landlord. There was a privity
between them. And such evidence is binding on the
parties and their privies.

4. The appellants were *bona fide* purchasers, for a va-
luable consideration, and without any notice of fraud.
If there were defects in the title of *S. J.*, on the ground that
she was a fraudulent grantee, that cannot affect the appel-
lants who are *bona fide* purchasers. The *second* section of
the act, (1 *N. R. L.* 75. *sess.* 10. *ch.* 44.) contains the 13
*Eliz.* c. 5. and the *third* section embraces the stat. of 27 *Eliz.*
*c.* 4. Each of those statutes contained a *proviso*, in favour of
*bona fide* purchasers ; both of which *provisoes* are incorpo-
rated together in the *sixth* section of our act. The respond-
ents claim as *creditors*, and they must show that they are
fair *bona fide* creditors, not creditors for the sake of specu-
lation, or to defeat a *bona fide* purchaser. The appellants
were *bona fide* purchasers, for a valuable consideration ;
and in their answer, under oath, have denied all knowledge
or suspicion of fraud or defect of title, when they pur-
chased. The appellants, then, present a case under the
*second* section of the act, or the 13 *Eliz.* c. 5. and claim
the benefit of the *proviso*, contained in the *sixth* section,
the language of which is broad, and extends to any person
purchasing *bona fide*, without any notice or knowledge of
the covin, fraud or collusion. It is settled, that a *bona fide*
purchaser from a fraudulent grantee, has a good title against
a subsequent purchaser from the fraudulent grantor.
(1 *Sid.* 133. *Skinn. Rep.* 423. 4 *Bos. & Pull.* 332. 3
*Lev.* 387. *Comb.* 247.) As between the parties them-
selves, the title of the grantee is perfect. At the time the
fraudulent grantee conveys, he has a title, and the purcha-
ser, except as to creditors, has the rightful title. The
fraudulent grantee acquires all the rights which the grantor
had ; and as the grantor may sell, so may the grantee.

Though, as to an existing creditor, the sale may be fraudulent; yet it is not so, in regard to a subsequent creditor. If we are charged with an absurdity, we answer, that the other side are equally absurd. But the *proviso* to this act avoids all absurdity. It says, that when a *bona fide* purchaser appears, the original deed shall not be void; though it would have been before. It will be said, that the *proviso* applies only to the original conveyance, or the first grantee. But the *proviso* speaks of *collusion*, which could not be as between original grantor and grantee. *Holt*, Ch. J. (*Skinner*, 423.) says, the proviso saves the subsequent purchaser. In the case of *Preston* v. *Crofut*, (1 *Day's Conn. Rep.* 527. *note*,) so much relied on, the very judges who pursued the same course of reasoning, as was taken by the Chancellor, admit, that in *England*, it is the *proviso* which protects the *bona fide* purchaser; but the *Connecticut* statute has no such *proviso*. It is said that *policy* is against the construction for which we contend; that though the debtor or fraudulent grantor may sell, yet if the fraudulent grantee be allowed to sell, the creditors lose all chance of being paid. But is not the money in the pocket of the fraudulent grantor, as much beyond the reach of creditors, as it would be in that of the fraudulent grantee?

Again; the doctrine on which the decree in this case is founded, is not only contrary to the *English* adjudications, but must lead to dangerous consequences. A fraudulent grantee cannot be protected by the statute of limitations; and a purchaser from him is equally unprotected by it. If so, then a remote purchaser, after the lapse of fifty years, would be liable to have his title defeated, by this alleged defect in the title of a fraudulent grantee. And this, too, in favour of *creditors*, who are not entitled to protection so much as *bona fide* purchasers. The purchaser's lien is specific. The creditor has a right against all the property of his debtor. The sound doctrine is, that the *bona fide* purchaser is equally protected as a creditor, by the proviso in the statute. (*Rob. Fraud. Conv.* 495. *Comb.* 222. 9 *Vesey, Jun.* 190. 2 *Blk. Com.* 449. *Cowp.* 711. 1 *Wash. Rep.* 199. 217. 1 *Madd. Ch.* 217. 5 *Co.* 60. *b.* 2 *Bro. C. C.* 148. 3 *Johns. Ch. Rep.* 147. 345.)

IN ERROR.
.......
ALBANY,
April, 1820.

ANDERSON
v.
ROBERTS.

*Boyd* and *S. Jones*, jun. contra : 1. There was no objection as to the jurisdiction of the Court, made at the hearing, though it was suggested in the answer, that the remedy was at law, not in equity. This Court will not, now, listen to this technical objection. Besides, the object of the bill was to get rid of conveyances alleged to be fraudulent, and which impeded the respondent's recovery at law. A Court of equity has, at least, concurrent jurisdiction, as to fraud.

2. As to the objection, that *M'Leod* should have been made a party. If he had been a party, the appellants would have demurred to the bill, because he was their tenant. Admitting that he was a tenant of the respondents, as the term had expired, he had no interest. As to *costs*, we shall not touch them. The decree goes only to quieting the possession, and stays any proceedings to disturb it. As to the *costs* in the ejectment suit, the parties are left to their legal rights. As to the *deposit* in Court, the respondents having gained their cause, were entitled to take it back; but that is a mere point of practice in the Court below. No objection was made in the Court below, as to the competency of the proof of the two assignments ; and it is, at best, but mere matter of form.

As to the depositions of *Sarah Johnson* and *Thomas Allen ; S. J.* being, herself, *particeps fraudis*, she ought not to be allowed to testify. But we put the objection on the ground of *interest*. She had given a deed with a warranty ; and, as the Chancellor added, she would have been liable to an action for a deceit. But if her deposition had been received, it could not have, in the least, varied the decree. *Allen's* deposition was taken in an ejectment suit, to which the respondents were not parties ; and they alleged, in their answer, that *M'Leod* was their tenant.

3. But the only important question is, as to the construction of the statute of frauds. The testimony of *T. W. Smith* shows, that there was gross and palpable fraud in fact. The appellants being purchasers under *Taylor's* judgment of the 14th of *May*, 1808, stand in the place of the judgment creditor, and are entitled to all his rights. The debt, in fact, accrued the 2d of *February*, 1808. (*Sands* v. *Hildreth*,

IN ERROR.

ALBANY,
April, 1820.

ANDERSON
v.
ROBERTS.

14 *Johns. Rep.* 498.) The appellants are subsequent pur-chasers in 1809. May not the respondents avail themselves, also, of the mortgage to *Lyon*, executed on the 28th of *December*, 1805, and registered the 29th of *May* following, to defend themselves against the fraudulent conveyances? Thus, as purchasers under the judgment, the respondents were judgment creditors at the time of the fraudulent conveyances, and as assignees of the mortgage, they are also creditors of *G.* A *creditor*, at the time of the fraudulent conveyance, has a right to set it aside ; and so has a subsequent creditor. A deed, void as to *creditors*, is void for the benefit of all creditors. If void at the time, it is so to all intents and purposes, thereafter, as to creditors of the grantor. If, then, *Taylor* was a creditor, the deed was void as against him, and his judgment attached, and the property was sold under that judgment. *G.*, in 1808, therefore, had no right or title remaining in him. As to the mortgage by *S. J.* to *Stansbury*, mentioned in the answer, it no where appears in the case ; and if any reliance were placed on it, it should have been produced. The title, then, of the respondents, is clear and unimpeached.

Again ; as against *creditors*, a deed by a fraudulent grantee, to a *bona fide* purchaser, without notice, has been uniformly held void, under the statute of 13 *Eliz.* c. 5. Not a case to the contrary is to be found in the *English* books. A fraudulent grantee is incapacitated from making any conveyance to the prejudice of the rights of third persons ; because, such deed is, *ipso facto*, void, and of no effect, as against creditors ; and because the grantor in such a deed, is so circumstanced that he cannot convey without fraud. If the statute makes the conveyance utterly void as against creditors, it is absurd to say, that the grantee of such fraudulent grantor, can convey a valid title. No inference can be drawn from the decisions as to *voluntary* conveyances. A voluntary deed is legal and valid in its inception ; it is not fraudulent merely because the grantor is indebted, unless he is insolvent, or the conveyance is made under circumstances showing an intention to defraud creditors. The *second* section of the act avoids all conveyances made to defraud creditors ; the *third* section avoids

conveyances made to defraud *bona fide* purchasers. Under IN ERROR.
.......
ALBANY,
April, 1820.
ANDERSON
v.
ROBERTS; the *second* section, the deed is utterly void; for as long as any creditor remains unpaid, he cannot be defeated by any act of the fraudulent grantee; the estate, as regards the creditors, remains in the grantor, and never passes to the fraudulent grantee. Under the *third* section, as to purchasers, the deed is good as between the parties, until a purchaser appears.

(SPENCER, Ch. J. And is not a deed made to defraud creditors, good, until the creditors take measures to avoid it ?)

We apprehend not; for none but a judgment creditor can take measures; and then it would be a statute to protect *judgment* creditors only, who want no protection. The only sound doctrine, and without which the statute would be for ever defeated, is, that, as to creditors, the deed is utterly void. The *proviso* in the act applies to voluntary conveyances, and is intended to protect a *bona fide* purchaser of the grantee. But when the case of a *creditor* arises, the deed is absolutely void as to him, and the *proviso* does not apply. The object was to eradicate *fraud*, to reach the monster in the inmost recesses of his den. But if a conveyance from a fraudulent grantee is to be sustained, there is no possibility of stopping his ravages. The statute of 13 *Eliz.* c. 5. has the same *proviso*; not a case, however, is to be found in *England*, under that statute, in which such a conveyance is held good; though the decisions under the 27th *Eliz.* are numerous. This shows, most conclusively, what has been the uniform construction of the former statute. This question was very much discussed in the case of *Preston* v. *Crofut.* (1 *Day's Conn. Rep.* 527. n.) It was a very strong case; yet the Supreme Court of *Connecticut* decided, that the conveyance was void as to the creditors of the original grantor. In *Sands* v. *Codwise*, (4 *Johns. Rep.* 536. 598.) the *Chief Justice* held the deeds made to defraud creditors; as absolutely void, to all intents and purposes.

Again; there are peculiar features in this case, to show that the appellants are not *bona fide* purchasers. They

IN ERROR.

ALBANY,
April, 1820.

ANDERSON
v
ROBERTS.

bought for one dollar and fifty cents. *S. J.* never took possession under the fraudulent deeds; but the possession remained as it was before. What right had *A.* to purchase of a fraudulent grantee out of possession? It is true, the appellants deny all notice of the fraud; but they did not inquire, though there was enough to put them on inquiry. It was their duty to inquire of the tenant in possession who was the real owner of the property. They purchased at their own risk; and if they did not inquire, they are chargeable with notice. There was, at least, constructive notice. The denial in the answer is only of actual notice.

*Burr,* in reply, discussed the facts in the case, and contended, that it was not a proper subject for a court of equity but that the respondents should have sought relief at law. That this objection to the jurisdiction of the court was always good, and might be made in any stage of the cause. (2 *Bro. P. C.* 39. 3 *Bro. P. C.* 539. 542. 4 *Bro. P. C.* 385. 692. 700. 7 *Bro. P. C.* 437. 1 *Bro. C. C.* 573. *Cooper's Equ. Pl.* 143. 189. 1 *Madd. Ch.* 140—142.

The appellants, in their answer, positively deny all notice whatever of fraud; and the answer will prevail against a single witness. (*Cooper's Equ. Pl.* 145, 146.) As to the construction of the statute, he contended, that the *proviso* applied to both sections, and protected a *bona fide* purchaser of a fraudulent grantee, without notice; that there was not a decision to the contrary, except that in *Preston* v. *Crofut;* and *Reeves, J.* admits that the *proviso* makes all the difference, there being no *proviso* to the statute of frauds in that state. He referred to the argument of the learned counsel for the defendant in that case, (*Gould,*) as luminous, cogent, and perfectly conclusive. And the counsel (*Daggett* and *Sherman*) who argued on the other side, admitted, that if the statute of *Connecticut* had contained the same *proviso* as the *English* statute, it would have precluded all controversy on the question.

SPENCER, Ch. J. The principal question which has been discussed, is not free from difficulty. It is one that

ought to be definitively settled. Indeed, it is matter of
surprize, that a statute of such long standing as the 13th of
*Eliz.* ch. 5. should not have received a settled construction
in the *English* courts. The want of authority on this point
makes neither for nor against either of the parties. The
second section of our statute (1 *N. R. L.* 75.) for the prevention
of frauds, is a transcript, substantially, from the 13th of
*Eliz.* ch. 5.; and the 3d section of the same statute is a
transcript of the 27th of *Eliz.* ch. 4. To both the British
statutes there was nearly the same proviso as is contained
in the 6th section of our statute. It provides and enacts
that the act, or any thing contained therein, shall not ex-
tend or be construed to impeach, defeat, make void, or frus-
trate *any conveyance, &c.* of, in, to, or out of any lands, &c.
goods or chattels, at any time heretofore had or made, or
to be made, upon or for good consideration, and *bona fide,*
*to any person, &c.* not having at the time of such convey-
ance or assurance made, any manner of notice or knowledge
of such covin, fraud, or collusion as aforesaid.

The Chancellor admits the law to be settled, that under
the 27th of *Eliz.* a purchaser for a valuable consideration, and
without notice, from a voluntary or fraudulent grantee, shall
be preferred to a subsequent purchaser, for valuable conside-
ration from the original grantor. The cases he has cited
show that such has been the uniform construction
of cases arising under the 27th of *Eliz.* *Sugden* (*Law of*
*Vendors,* 436.) and *Newland* (*on Contracts,* 404.) consider
this construction as entirely settled. But the Chancellor is
of opinion that a different rule of construction prevails under
the 13th of *Eliz.* which protects creditors from fraudulent
conveyances by their debtors. His idea is, that the statute,
in its enacting clause, operates on the deed from the fraudu-
lent debtor, and that the proviso in the act applies to that
original conveyance from the debtor, and saves it, when
made to a *bona fide* purchaser, for valuable consideration;
and that such a conveyance is supported by the proviso,
however fraudulent the intention of the grantor may be;
that the original deed from the debtor to a fraudulent grant-
or, is utterly void as to creditors, and, as against them, the
grantee can make no conveyance, for he has no title, as

IN ERROR,
.......
ALBANY,
April, 1820.

ANDERSON
v.
ROBERTS.

against them, on the ground that the proviso does not extend to such subsequent conveyance by the fraudulent grantor. He thinks that the contrary doctrine would defeat the policy of the act; and that there is no analogy between a conveyance by the grantee under the 27th, and under the 13th of *Eliz.*, for, in the former case, he has a good title until the conveyance from him, or from the first grantor to a *bona fide* purchaser, takes place; whereas, in the latter case, his title as against the creditor was absolutely void from the beginning. I cannot assent to the correctness of these positions. On the contrary, it appears to me, there is a strong, close, and decisive analogy between the two statutes; and the proviso in the 6th section of our statute, illustrates the sense of the legislature, that the same construction is applicable to both the statutes. It has been suggested by the *Chancellor*, that in the revision of our laws, the provisos to the *British* statutes were consolidated in the 6th section of our statute; and that the principle is, that the construction is to be the same since, as before the revision. I apprehend, that the provisos to both statutes are alike, and that there never has been a difference of construction upon them. Indeed, it has been admitted on all hands, that we are entirely without decisions in the *English* Courts, upon the 13th of *Eliz.*

The main position on which the difference of construction rests, is, that the original deed from the debtor to a fraudulent grantee, is " utterly void" as to creditors. This ground entirely fails, for the statute of 27th of *Eliz.* provides, that all conveyances made to defraud purchasers, shall be deemed and taken to be " utterly void, frustrate, and of none effect." It is true, that there may be this difference between the statutes; a conveyance to defraud purchasers, generally operates only on those who purchase of the original grantor, subsequent to the fraudulent conveyance; whereas, a conveyance to defraud creditors may, and in most cases is, intended to defraud existing creditors; but it is an undeniable proposition, and such has been the uniform course of decision, that the statute of 13th of *Eliz.* equally protects creditors whose debts accrue subsequent to the fraudulent conveyance, as those whose debts were due when it was made; and

IN ERROR.
.......
ALBANY,
April, 1820.

ANDERSON
v.
ROBERTS.

I cannot perceive the least difference between a conveyance to defraud subsequent creditors, and a conveyance to defraud subsequent purchasers.   The 13th of *Eliz.* declares a conveyance to be void only as against creditors, &c. attempted to be defrauded, whilst the 27th of *Eliz.* declares the conveyance to be void only as against those who have purchased, or may purchase ; but, as against the fraudulent grantors, in both cases, the conveyances are valid and effectual, and wholly unaffected by the provisions of either statute.   What becomes, then, of the estate, and in whom is it vested, after a conveyance made to deceive existing creditors, or those who become creditors subsequent to the fraudulent conveyance ?   As against the grantors, the conveyance is effectual. Subsequent creditors, having no debt due at the time, the possibility of their having debts cannot prevent the conveyance from taking effect,   Those creditors whose debts are due, even if they have obtained judgments, and acquired a *lien*, have gained no vested interest in the lands ; and they may be paid, without resort to the land fraudulently conveyed.   The fee is not in abeyance, and the inevitable conclusion is, that the legal title has vested in the fraudulent grantee, subject to be devested, if the creditors see fit to call in question the fraudulent conveyance, and after the creditor has proceeded to sell, on execution, the lands thus fraudulently conveyed.   This was so decided in the Supreme Court in *Osborne v. Moss*, (7 *Johns. Rep*, 161.) and in *Hawes v. Leader*, (*Cro. Jac.* 270. and *Yelv.* 196.)   In both cases, it was decided, that if goods were conveyed to defraud creditors, the conveyance was void only as against them, but remained good as against the party, his executors and administrators.

In my judgment, the error of those who assert, that a fraudulent grantee under the 13th of *Eliz.* takes no estate, because the deed is declared to be *utterly void*, consists in not correctly discriminating between a deed which is an absolute nullity, and one which is voidable only.   No deed can be pronounced, in a legal sense, utterly void, which is valid as to some persons, but may be avoided, at the election of others.   In 2 *Lilly's Abr.* 807. and *Bac. Abr.* tit. *Void and Voidable*, we have the true distinction.   A thing is void which is done against law, at the very time of doing it,

IN ERROR.
........
ALBANY.
April, 1820.

ANDERSON
v.
ROBERTS.

and where no person is bound by the act; but a thing is voidable which is done by a person who ought not to have done it, but who, nevertheless, cannot avoid it himself, after it is done. *Bacon* classes under the head of acts which are absolutely void, to all purposes, the bond of a *feme covert*, an *infant*, and a person *non compos mentis*, after an office found, and bonds given for the performance of illegal acts. He considers a fraudulent gift void, as to some persons only, and says it is good as to the donor, and void as to creditors. Whenever the act done takes effect as to some purposes, and is void as to persons who have an interest in impeaching it, the act is not a nullity, and, therefore, in a legal sense, is not utterly void, but merely voidable. Another test of a void act or deed, is that every stranger may take advantage of it, but not of a voidable one. (2 *Leo.* 218. *Viner*, tit. *Void* and *Voidable*, A. pl. 11.) Again; a thing may be void in several degrees: 1. void, so as if never done, to all purposes, so as all persons may take advantage thereof; 2. void to some purposes only; 3. so void by operation of law, that he that will have the benefit of it, may make it good. (*Viner*, tit. *Void* and *Voidable*, A. pl. 18.) In *Prigg* v. *Adams*, (2 *Salk.* 674.) the defendant justified as an officer, under a *ca. sa.*, on a judgment in the Common Pleas, upon a verdict of 5s., for a cause of action arising in *Bristol.* The plaintiff replied, the private act of parliament, for erecting the *Court of Conscience* in *Bristol*, wherein was a clause, that if any person bring such action in any of the Courts at *Westminster*, and it appeared upon trial to be under 40s., that no judgment should be entered for the plaintiff; and that if it be entered, that it shall be *void.* Upon demurrer, the question was, whether the judgment was so far void, that the party should take advantage of it in this collateral action. The Court held, that it was not void, but voidable only, by plea or writ of error. Upon authority, therefore, I insist, that the expressions in the statutes of 13th and 27th of *Eliz.*, that conveyances, in contravention of those statutes, shall be deemed *utterly void*, &c. must necessarily be construed, as voidable only by the party aggrieved. It seems to me, that the construction upon the 27th *Eliz.*, in which the

IN ERROR.
·······
ALBANY,
April. 1820.
ANDERSON
v
ROBERTS.

same words are used, is applicable to the 13th of *Eliz.* In the present case, the respondents claim the premises under a judgment obtained against *Griffith,* the fraudulent grantor, subsequent to the fraudulent conveyance to *Sarah Johnson;* so that, when the deed was given to her, there was no lien on the estate conveyed, and it was a matter of entire contingency, whether the property conveyed would be necessary to pay that debt.

This point has been decided in the Supreme Court, in the case of *Jackson, ex dem. Merrit,* v. *Terry,* (13 *Johns. Rep.* 471.) The plaintiff deduced a title under *A. Turner* to *J. Turner,* for the consideration of 400 dollars, by a deed dated the 24th of *September,* 1804, and a deed from *J. Turner* to the lessor, dated the 9th of *April,* 1806. The defendant gave in evidence a judgment, on the fourth *Tuesday* of *September,* 1804, in favour of one *Hubbard,* against *A. Turner,* and a sale under an execution thereon, to one *Wood,* on the 10th of *April,* 1805. *Thompson,* Ch. J. in giving the opinion of the Court, admitted, that the conveyance from *A. Turner* to *J. Turner,* was a gross fraud, and made expressly to avoid *Hubbard's* judgment; but that the lessor, being a *bona fide* purchaser from *J. Turner,* without knowledge of the fraud, he was not to be prejudiced by it; and judgment was given for the plaintiff. In the case of the lessor of *Hartly* v. *M'Anutty,* (4 *Yeates' Rep.* 95.) it was decided, that a voluntary conveyance to defraud creditors, passed the estate to the grantee; and that the lands conveyed were, in his hands, subject to his creditors.

The Chancellor adopts the reasoning of the majority of the Court of Errors in *Connecticut,* in *Preston* v. *Crofut.* (1 *Con. Rep.* 527. note.) That case was very ably discussed by those who maintained different opinions ; and, it is manifest, that it was decided on the peculiar structure of the statute, which was taken from the 13th of *Eliz.,* of that state, without the *proviso.* The counsel who argued for the party who had judgment, expressly admit, that had the proviso to the 13th *Eliz.* been annexed to their statute, it would have precluded all controversy on the subject ; and the same counsel admit, that a sale on good consideration, with intent to defraud creditors, to one who is ignorant of

the intent, is valid, under their statute ; although such a case is embraced in the general words of the proviso, in the 13th of *Eliz.*, though for that only, the proviso would have been unnecessary.    The reason, (they argued) of providing for a subsequent purchaser, must have resulted from the very construction of the enacting clause for which they contend, and the same construction would render any proviso for the immediate vendee of the debtor unnecessary.    In the latter case, the vendee takes from one who has a title to convey : In the former, the title of the subsequent *bona fide* purchaser being intercepted, by the enacting clause, a proviso is necessary to give efficacy to the deed.    My opinion, in *Sands* v. *Hildreth*, (14 *Johns. Rep.* 499.) has been referred to, to show that I considered a deed given by a debtor, with a view to defraud his creditors, to a *bona fide* purchaser, as protected by the 6th section of our statute. I agree with the counsel whose arguments I have quoted, that the expressions of the proviso were broad enough to embrace such a case ; but I never was of the opinion, that the common law, or the statute of 13th of *Eliz.*, without the proviso, would have affected a deed, where, though the intion of the grantor was fraudulent, yet the grantee was a *bona fide* purchaser for valuable consideration.    That case did not call for the expression of an opinion upon such a case as the present.    The terms of the proviso are broad and extensive : they apply to any conveyance, whether from the fraudulent grantor, or fraudulent grantee.    It meant to protect a *bona fide* purchaser for valuable consideration, without notice of the fraud, from the operation of the statute. This, it appears to me, is manifest, as well from the internal evidence of the proviso, as from the plainest maxims of equity and justice.    By the proviso, the act, or any thing contained in it, shall not extend, or be construed to impeach, defeat, &c. *any conveyance* of any lands made *upon good consideration and bona fide*, to any person, not having, at the time of such conveyance to him made, any manner of *notice or knowledge of such covin, fraud, or collusion*, as is aforesaid. The enacting clause had pronounced as fraudulent and void, those conveyances only which are devised and continued, of malice, fraud, covin, collusion, or guile, to delay, hin-

IN ERROR.

. . . . . . .

ALBANY,
April, 1820.

ANDERSON
v.
ROBERTS.

der, or defraud creditors, &c.; and, most certainly, it contemplated two parties to the collusion and fraud, the grantor and the grantee.   The words in the proviso, *notice or knowledge of such covin, fraud, and collusion*, are not applicable to the original parties, but embrace subsequent purchasers only.   Again, the proviso is general; it exempts *any conveyance* upon good consideration, and *bona fide, to any person*, not having notice of the fraud or collusion, from the effects of the enacting clause.   And why should not its benefits be extended to any *bona fide* purchaser, for valuable consideration, whether he purchases from the fraudulent grantor or the fraudulent grantee?   I trust it has sufficiently appeared, that the fraudulent grantee takes the entire interest of the fraudulent grantor; and that the deed is voidable, at the instance of the creditor, not legally and strictly void.   The general principle why a *bona fide* purchaser, for valuable consideration, ignorant of the covin, is secure in his purchase, is well illustrated by Chief Justice *Marshall*, in *Fletcher* v. *Peck*, (6 *Cranch*, 133.) he says, "if a suit be brought to set aside a conveyance obtained by fraud, and the fraud be clearly proved, the conveyance will be set aside as between the parties; but the rights of third persons, who are purchasers without notice for a valuable consideration, cannot be disregarded.   Titles, which according to every legal test, are perfect, are acquired with the confidence which is inspired by the opinion, that the purchaser is safe.   If there be any concealed defect arising from the conduct of those who had held the property long before he acquired it, of which he had no notice, that concealed defect cannot be set up against him.   He has paid his money for a title good at law; he is innocent, whatever may be the guilt of others, and equity will not subject him to the penalties attached to that guilt.   All titles would be insecure, and the intercourse between man and man would be very seriously obstructed, if this principle be overturned."

Where the reason is the same, the law must be the same. It is in vain that we search for any difference between a conveyance by a fraudulent grantee, where the intention was to deceive subsequent purchasers, and a conveyance by

IN ERROR.
.......
ALBANY,
April. 1820.

ANDERSON
v.
ROBERTS.

a fraudulent grantor, where the intention was to defraud present or future creditors. Some distinctions have been attempted, but they strike me as too refined and subtle for practical use. The ground adopted by the Courts, for protecting *bona fide* purchasers. without notice, is solid and substantial, and applies, with equal force, to both descriptions of grantees. In *Prodger* v. *Langham*, (1 *Sid.* 133.) it is stated, " for although the estate of the first feoffor was, in its creation, covinous, and so void, against a purchaser for valuable consideration from the first feoffor, that feoffment shall be preferred to a subsequent feoffment from the first feoffor." The same principle was adopted in *Andrew Newport's case*. (2 *Skinner*, 423.) *Roberts*, (*Fraud. Con.* 497.) after citing those cases, says, " the valuable consideration, whenever it occurs, entirely obliterates the fraud, so that it can never again, in any shape, affect the transaction." The principle is, that although a deed be fraudulent in its crea.ion, yet by subsequent matter, it may acquire validity, in favour of a purchaser, for valuable consideration. And where two persons have equal equities, the maxim applies, *qui prior est in tempore potior est in jure.* It was pertinently observed by the counsel in *Preston* v. *Crofut*, " whether the exposure of purchasers to the loss of property fairly bought of a fraudulent vendor, was a greater evil; than for ever to deprive the creditor of his claim, after a *bona fide* sale, was a question proper for the consideration of the Legislature." In my judgment, they have decided it in favour of the purchaser from a fraudulent vendee. I must be understood, as qualifying the right of the purchaser from the fraudulent vendee : It must be prior, in point of time, to a sale for a valuable consideration, by the fraudulent grantor ; and it must, also, be prior to a sale on execution, at the suit of the creditor. Although, in *Jackson* v. *Tracy*, the sale under the judgment was prior to the deed from the fraudulent grantee, yet, in that case, the registry of the latter deed first took place, and the transaction happened in a county where deeds are required to be registered.

In the present case, *S. Johnson* gave a mortgage to *Daniel Stansbury* on the 28th of *March*, 1808, on the premises,

to secure the payment of 330 dollars and 89 cents; and this　IN ERROR.
mortgage was prior to *Taylor's* judgment, under which the　·······
respondents claim ; and it stands uninfected with notice, or　ALBANY, · ·
the want of consideration.　April, 1820. ··

One of the objects of the bill was to be relieved from the　ANDERSON ·'
effect of the judgment in ejectment obtained by the appel-　v.
lants against *M·Leod*.　The facts are, that the appellants　ROBERTS.
brought an ejectment against him ; he alone appeared and
defended.　The cause was tried, and a verdict and judg-
ment passed against him.　The respondents insist, that
*M Leod* was their tenant, prior to his becoming a tenant to
the appellants, and that if he attorned to them, the attorn-
ment was void; that their possession has not been changed;
and that the appellants ought not to be permitted to proceed
to change the possession, under their judgment, and thereby
put the respondents to the necessity of bringing an action at
law to recover possession.　The appellants deny any know-
ledge of any agreement between the respondents and
*M'Leod*, for leasing the premises, and they state and rely
upon the trial and judgment.

The Chancellor, in the first instance, granted an injunc-
tion staying all proceedings on the judgment in ejectment ;
and the final decree renders the injunction perpetual.　The
objections are, that *M·Leod* is not made a party to this suit ;
and had he been a party, the decree would, nevertheless, be
erroneous.

It is an undoubted principle, that a Court of equity will
not relieve, where the bill is in the nature of a bill for a new
trial, in a court of law.　After a verdict, a bill of discovery
does not lie in support of a fresh action.　Thus, when a ·
plaintiff not being able to prove a letter written by him to ˉ
the defendant, filed a bill of discovery, to clear up the mat-
ter, the defendant pleaded the verdict, and demurred for
want of equity, the plea and demurrer were allowed. -
(*Ch. Cases*, 65.　8 *Viner*, 542.)　Where money was paid in ˋ
part, for goods sold, and the receipts were lost, and the
whole was recovered at law, a bill of discovery was then -
filed, and Lord Keeper *North* said, " you come too late for
a discovery after verdict."　But this question underwent a
very full and solemn examination in this Court, in *Simpson*

IN ERROR.
.......
ALBANY,
April, 1821.

ANDERSON
v.
ROBERTS.

v. *Hart,* (14 *Johns. Rep.* 63.) and in the Court of Chancery. (1 *Johns. Ch.* 91.) It was clearly held, in that case, that where Courts of law and equity have concurrent jurisdiction over a question, and it receives a decision at law, equity can no more re-examine it, than the Court of law, in a similar case, can re-examine a decree in the Court of equity. The case of *Bateman* v. *Witloe,* (1 *Sch. and Lef.* 201.) was referred to with approbation. In that case, a verdict was obtained at law, which the plaintiff considered unjust, and having failed in his application for a new trial, he sought relief in equity, but the bill was dismissed. Lord Chancellor *Redesdale* said, he could not find any ground whatever for a Court of equity to interfere, because a party had not brought evidence which was in his power, at the time, or because he had neglected to apply, in due time, for a new trial. He observed, that there were cases where a verdict has been obtained by fraud, or where a party has possessed himself improperly of something, by means of which he has an unconscientious advantage at law, which equity will either put out of the way, or restrain him from using; but, without circumstances of that kind, he did not know that equity ever does interfere to grant a new trial of a matter which has been discussed in a Court of law; a matter capable of being discussed there, and over which the Court of law had full jurisdiction. In *Simpson* and *Hart,* the Chancellor said, it was the settled doctrine of the *English* Chancery, not to relieve against a judgment at law, on the ground of its being contrary to equity, unless the defendant below was ignorant of the fact in question, pending the suit, or it could not be received as a defence. It is true, that the decree in that case was reversed; but the principles were admitted to be sound, though they were considered inapplicable to the facts of that case.

The respondents must be considered either as strangers to the ejectment suit, or as having defended the same in the name of *M'Leod.* In the first case, the subject matter of that suit was *res inter alios acta;* and it never can be allowed to them to overhaul or draw that trial in question. They are mere intruders into that controversy, and have no right to impeach the proceedings. In the second case, if

having had notice of the ejectment, instead of making
themselves defendants, as they might have done, if they
were the real landlords, they have chosen to defend the
suit in *M'Leod's* name, they have waived their right to
question the proceedings in this manner. But their rights
at law were not concluded in an independent suit. The
Supreme Court, in denying the motion for a new trial,
(12 *Johns. Rep.* 183.) expressly said, that although *M'Leod*,
after having been proved to be a tenant to the appellants,
could not set up a tenancy under *Roberts,* and was bound
to restore them the possession; yet, that the rights and
claims of others to the premises, could be tried after the
possession had been given up.

There existed, then, no impediment to the respondents
bringing their action at law; and I must consider it a novel
doctrine, not to be sanctioned, that a Court of equity will
take cognizance of questions purely of a legal nature,
and within the acknowledged jurisdiction of a Court of law.
I wish not to be understood, as insinuating, that the Court
of Chancery, on the present occasion, has intentionally in-
vaded the jurisdiction of the common law Courts. I am
sure it would not do so; yet, I cannot avoid consider-
ing the entertaining this bill, as such encroachment. The
appellants have not precluded themselves from making the
objection. They have insisted, in the answer, on the trial
and verdict at law, as precluding the respondents. By the
judgment at law, the appellants have acquired a right to
recover possession of *M'Leod,* and, also, to recover their
*mesne* profits and costs; of this right, the decree deprives
them in part.

The principle, that a Court of equity will give relief in
cases of fraud, is undoubted. It is a principal object of
equity jurisdiction; but, on the principles I have advanced,
in considering the first point, a Court of equity ought not
to decree against a *bona fide* purchaser for valuable consi-
deration, without notice, though his title be derived from a
conveyance intended to defraud creditors. The appellants
have answered, under oath, that they are such purchasers,
and, consequently, they are within the protection of the
proviso to the statute.

IN ERROR.
·······
ALBANY,
April, 1820.

ANDERSON
v.
ROBERTS.

I am for reversing the decree, and dismissing the respondents' bill, on both grounds : 1. That the respondents have made out no case for relief in equity ; and 2. That the appellants have established their title to protection, in their purchase of the *Stansbury* mortgage.

PLATT, J. (After stating the evidence.) From this evidence it appears, that *Benjamin S. Anderson* has a regular title under the judgment of *Clason* against *Sarah Johnson;* the deeds to her being *prior* to the judgment of *Taylor* against *Griffith,* under which the respondents claim. But it is insisted, on the part of the respondents, that the conveyances from *Griffith* to Mrs. *Johnson,* were made to defraud the creditors of *Griffith,* and are, therefore, void as against the respondents. The evidence is abundantly sufficient to prove, that the two deeds from *Griffith* to *Sarah Johnson,* were made to defraud his creditors; and that *she conspired* with him for that purpose. And I think the proof so clear and irresistible on that point, that it is immaterial whether the affidavits of *Sarah Johnson* and *Thomas Allen,* be admitted or not. My opinion, however, is, that those affidavits were properly excluded, for the reasons assigned by the Chancellor.

It is, then, contended, on the part of the appellants, that even admitting the deeds to *Sarah Johnson* were fraudulent, yet, that *Benjamin S. Anderson* became a *bona fide* purchaser of her title, at sheriff's sale, for a valuable consideration, without notice of any such fraud ; and that the title under her was purged of the fraud, by means of such subsequent *bona fide* purchase. By the first section of the statute " for the prevention of frauds," it is enacted, that all grants, bargains, and conveyances of land, made to delay, hinder, or defraud creditors, shall, as against such creditors, be deemed " clearly and utterly void, frustrate, and of none effect." And the 6th section of the statute contains a proviso, that this act " shall not extend, or be construed to impeach, defeat, make void, or frustrate, any conveyance or grant of lands, for good consideration, and *bona fide,* to any person not having, at the time, any manner of notice or knowledge of such fraud." The original fraud being

IN ERROR.
........
ALBANY,
April, 1820.
ANDERSON
v.
ROBERTS.

proved, it is incumbent on the appellants, according to every construction of the statute, to bring their case strictly within the proviso. In my judgment, they have not done so. *Benjamin S. Anderson* bid 150 dollars, at the sheriff's sale, on the execution against *Sarah Johnson ;* and the premises (worth 1,500 dollars) were struck off to him. He received the sheriff's deed, in usual form, for all the right and title of *Sarah Johnson* in the premises, without any specification of the nature or quantity of her estate. The terms of such sales always imply the caution of *caveat emptor,* so far as to impose on the purchaser the duty of strict inquiry, and afford little ground for him to complain of being deceived. If *Sarah Johnson* had been in the actual possession under such deed; or, perhaps, if the possession had been vacant, a *bona fide* purchaser at a sheriff's sale, might be deemed within the proviso of the statute. But, in this case, *Sarah Johnson* had neither the *actual,* nor the *constructive* possession of the premises. The proof is clear and uncontradicted, that soon after the pretended conveyance from *Griffith* to her, *Griffith,* in his own right, executed to *Alexander Denniston* a lease of the premises, for five years, at an annual rent of 110 dollars. *Denniston* took possession, and held distinctly, as the tenant of *Griffith,* under that lease, at the time of the purchase by *Anderson.* It is proved, that *Sarah Johnson,* at no time, ever had the possession in person, or by her tenant; nor did she ever receive rent, or any other acknowledgment of her title. On the contrary, it appears, by the testimony of *Denniston,* that he refused to acknowledge her title, or to pay rent to her; and that, in fact, he held adversely to her claim. It is very clear, that if her title had been good, she could not have made a valid conveyance to any person, except the tenant in possession, or to *Griffith,* on account of the adverse possession. Now, when we take into consideration, that the premises were advertised by the sheriff; that the lands so advertised were then in the actual possession of a tenant holding in opposition to, and in defiance of, *Sarah Johnson,* and who so held at the date of *Clason's* judgment against her, and down to the time of the sheriff's sale, and when it is considered, that the sale was *at Newburgh,* within

a few rods of the house and lot in question, such adverse possession must be deemed *constructive notice* to *Anderson*, the purchaser, that her title was defective. It was enough to put him on inquiry, and that is equivalent to notice. This principle has been settled under the construction of the statutes for the recording and registry of deeds and mortgages, and in other analogous cases. *Anderson* does not, therefore, appear in the character of a *confiding* and *deceived* purchaser, who paid his money for an *ostensible* equivalent; but he stands in the light of a speculating adventurer, for a nominal consideration, and has no just claim to any thing more than *Sarah Johnson* herself could have legally claimed in the premises. I think he is not, in the language and sense of the proviso, " a purchaser for good consideration, *bona fide*, without any manner of notice," &c.

In my view of this case, it does not become necessary to decide the important question, whether a *bona fide* purchaser, for good consideration, without notice, &c. can acquire a valid title, as against creditors, by a conveyance from a fraudulent grantee of the defrauding debtor? That question is, however, fairly before us; the Chancellor has pronounced a deliberate opinion on it; and as the point is highly important to the community, I think the occasion requires, that the construction of the statute should now be settled, by the solemn decision of this Court. With profound respect, I have read the case of *Preston* v. *Crofut*, in the Supreme Court of Errors of *Connecticut*, (1 *Day's Rep. N. S.* 527. note,) where the subject has been concisely exhausted by the counsel and the Court. But, after the best consideration of which I am capable, my mind has been led to the conclusion, that His Honour the Chancellor has not given the true exposition of the statute; and that such a *bona fide* purchaser, under a fraudulent grantee, without notice, either actual or constructive, acquires a valid title, purged of the original fraud, as against creditors. The enacting clause, and the proviso, taken in connexion, certainly do not, *ex vi terminorum*, necessarily require a construction which would defeat such *bona fide* purchase. On the contrary, the words of the proviso seem large enough to save the rights of such a purchaser, according to their gram-

IN ERROR.
........
ALBANY,
April, 1820.

ANDERSON
v
ROBERTS.

matical sense and ordinary acceptation. In the eye of the legislature, and in the view of sound policy, it seems to have been an object-of as much solicitude to protect *honest purchasers*, as *honest creditors*. A purchaser who pays a fair price, for an ostensibly fair title, without notice, or ground for suspicion of any *latent* fraud in any previous link of the title, has, in my judgment, *higher equity* than an adventurous creditor, who trusts, without any *lien* on the debtor's land. He who *trusts* most, should *risk* most. The creditor *may* protect himself by exacting security, but the purchaser *cannot* guard against the future claims of unknown dormant creditors. It is better that such sleeping creditors should sometimes lose their money, than that titles to lands should be rendered precarious and insecure. I think it better accords with the letter and spirit of the statute, to say, that a *general creditor* must assert his claim before the fraudulent grantee of his debtor has deceived an honest purchaser, or that such creditor shall lose his right. A contrary doctrine would often enable a creditor to " convert his shield into a sword."

Our statute comprises the statutes of 13 *Eliz.* ch. 5. and 27 *Eliz.* ch. 4. without any essential variation; and this question arises upon the construction of the 1st section of our act, and the proviso in the 6th section, which, together, comprise the statute of 13 *Eliz.* ch. 5.

It was remarked by Lord *Mansfield*, in *Cadogan* v. *Kennett*, (*Cowp.* 434.) " that the principles and rules of the common law, as now universally known and understood, are so strong against fraud in every shape, that the common law would have attained every end proposed by the statutes of 13 *Eliz.* ch. 5. and 27 *Eliz.* ch. 4. The former of these statutes relates to *creditors* only; the latter to *purchasers*. These statutes cannot receive too liberal a construction, or be too much extended, in suppression of fraud. The statute of 13 *Eliz.* ch. 5. directs, ' that no act whatever, done to defraud a creditor, shall be of any effect against such creditor.' But, then, such a construction is not to be made in support of creditors, as will make third persons sufferers. Therefore, the statute does not militate against

IN ERROR.
.......
ALBANY,
April, 1820.

ANDERSON
v.
ROBERTS.

any transaction *bona fide*, and where there is no imagination of fraud. And so is the common law."

If the statute is a mere declaration or development of the principles of the *common law*, my construction is perfectly reconcilable with the decision of the Court of Errors of *Connecticut*, in *Preston* v. *Crofut*. The common law, the statute of 13 *Eliz*. ch. 5. and our statute for the prevention of frauds, all agree in the rule (according to my apprehension) that a conveyance, in which the grantor and grantee conspire to defraud creditors, is void as against creditors ; *provided*, however, that this rule shall not extend to defeat the title of *any bona fide* purchaser, for good consideration, without notice of the fraud. Now, the statute of *Connecticut*, on which that decision was founded, contains *no such proviso ;* and by such omission, the legislature of that state have chosen to alter and modify the rule of the common law, so as to make no saving or exception in favour of subsequent *bona fide* purchasers. I understand all the Judges, in *Preston* v. *Crofut*, to agree, that under their statute, without such proviso, the first *grantee*, as well as the *grantor*, must participate in the fraud, in order to render the deed void as to creditors. Now, if that be the true exposition of the statute, I ask, of what use or effect is the proviso, unless it be construed to extend to *subsequent* purchasers ? If it was unnecessary, in order to protect the *first bona fide* grantee, under a fraudulent debtor, and is not to be extended to a subsequent purchaser; then it follows, that the proviso in our statute is to be rejected as surplusage. In my judgment, the 6th section of our act, containing the proviso of 13 *Eliz*. ch. 5. was designed not merely to *explain*, but to *limit* and *qualify* the first section ; and I do not feel authorized to reject it as inoperative.

The universal silence in *Westminster Hall*, upon the precise point now under discussion, affords to my mind strong ground to infer, that the construction contended for by the respondents, was never sanctioned by the Courts in *England*. If such had been the doctrine in that country, the cases demanding an application of it, must have been of very frequent occurrence; and yet, we find no case, where

IN ERROR.
......

ALBANY,
April, 1820.

ANDERSON
v.
ROBERTS.

a creditor in *England* ever attempted to impeach a convey-ance on the ground of fraud, except where the purchaser, whose title was sought to be defeated, was either a party to, or was presumed conusant of such fraud.

· With great respect, therefore, I am satisfied, that the construction adopted by the Chancellor, is contrary to the policy and spirit of the statute " for the prevention of frauds." And that construction appears to be much more unsafe and inconvenient in this country, than in *England;* when we consider, that the transfer of titles to lands, is with us *necessarily frequent,* beyond all example in other countries. Vast quantities of our surplus lands, without occupants, are daily offered *for sale* in the market; and sound policy forbids, that we should recognize or sanction the principle of a *latent disease,* which reasonable care cannot perceive nor guard against, and which may, at some indefinite time, taint and destroy these titles.

I feel a decided conviction, that the construction given by His Honour the Chancellor, to the statute of frauds, is contrary to the general opinion, and common understanding in this community. It would, *practically,* introduce a *new* and *important* rule of property, with a retrospective effect; and I dread the evils that might flow from the experiment. It would, undoubtedly, in many cases, bar an inlet to fraud, and operate to protect honest creditors; but, I fear, that in its general application, it would enable " *prowling assignees*" of creditors, to prey upon unsuspecting honest purchasers, who would be ruined, not for any important benefit to creditors, but to enrich a host of *mousing speculators.*

The exception to the jurisdiction of the Court of Chancery, is, I think, without foundation; and the authorities cited for the appellants on that point, have been totally misapplied, on the argument. To sift and scrutinize frauds, by a bill of discovery, and to set aside and annul fraudulent conveyances, so that they may not be set up at law after the evidence of the fraud may be lost, is, emphatically, within the appropriate jurisdiction of a Court of equity. A Court of law can neither compel a discovery, nor set aside a fraudulent deed. And even if the fraud could now be

proved in an action of ejectment, so as to defeat the fraud-ulent conveyance, a judgment in ejectment would be no bar to another suit, in which it might hereafter be impossible to prove the fraud. The future security of the true title, therefore, demands, that the formal evidence of the *corrupt* title should be destroyed, or that the party should be restrained from using it; and a perpetual injunction is the proper means for that purpose.

The decree awards an injunction against suing out a *habere facias possessionem* in the ejectment suit of *Anderson* v. *H. M'Leod*. It is said, that that was a proceeding *inter alios acta;* and, therefore, not a subject for decree between these parties. In my judgment, that objection is unfounded. Part of the *gravamen* of the plaintiffs was, that the *Andersons*, in order to fortify their spurious title, had tortiously procured an attornment to them from *M'Leod*, who was, in fact, a tenant under the plaintiffs; (holding under a lease for a year, now expired;) and that by virtue of that attornment, which *M'Leod* could not question, the *Andersons* had recovered judgment against him, whereby the plaintiffs were in danger of losing their possession, or having it changed without their consent. This was against equity, and why not enjoin against their taking possession? Why, *unnecessarily*, put the plaintiffs to an ejectment suit against the *Andersons*, in which their right to recover would be certain and inevitable?

I am, also, of opinion, that it was not necessary to make *Hector M'Leod* a party to this suit. The evidence clearly shows, that he occupied the premises under a written lease from the respondent, *Robert Roberts*, for a year; and that while so in possession, as the tenant of *Roberts*, B. S. *Anderson* induced him to make a fraudulent attornment to him. That attornment was a void act as regards the respondents, and *Hector M'Leod* has no rights in hostility to them. Although he may, by his own folly, have rendered himself liable to the costs of the ejectment suit of the *Andersons* against him, the decree does not touch that claim for costs. *M'Leod's* interest as lessee, whether he be considered the tenant of the appellants, or of the respondents, had expired long before this suit.

The answer of the appellants avers, that after *Benjamin S. Anderson* had purchased the premises at the sheriff's sale, the appellants, for a valuable consideration, procured an assignment to them of a mortgage which had been executed by *Sarah Johnson* to one *Daniel Stansbury*, bearing date the 28th of *March*, 1808; and also, that the appellants, for valuable considerations, obtained releases, or quit claim deeds, from *Sarah Johnson*, and from *William* and *Nancy King*, in *March*, 1810, for these premises. But these are substantive allegations which were denied by the general replication, and were not proved, nor offered to be proved. I, therefore, take no notice of those allegations in the answer.

Upon the whole case, my conclusion is, that the appellants have failed to prove that *Benjamin S. Anderson* is a *bona fide* purchaser, without notice of the fraud; and, on that ground, the decree ought to be *affirmed*.

The rest of the Court concurred in the opinion delivered by his Honour the *Chief Justice;* and it was thereupon OR-DERED, ADJUDGED, and DECREED, that the decree and orders of his Honour the Chancellor, complained of, in this cause, be reversed; and that the respondents' bill be dismissed, and that the injunction thereupon ordered, be dissolved; and that the respondents, *Robert Roberts* and *Samuel Boyd*, pay to the appellants their costs to be taxed, and that the record and proceedings be remitted to the Court of Chancery, to the end that this decree may be carried into execution.

Decree of reversal.