*Judge Lane
delivered tbo opinion oF the court:
The general object of the bill is to make settlement and distribution of the estate of Arthur St. Clair, deceased. An acoount of the debts has been taken by the master under former decrees, and sales have been made of the unincumbered portions of the land belonging to the estate. All these matters have been acted upon, and are considered to be settled. 6 Ohio, 227; Wright, 261, 592. The Bank of' the United States was a creditor; and the present question is a claim preferred by the bank, to obtain satisfaction of its debt by a sale of the remaining lands, provided a conveyance of certain tenements, which it has heretofore accepted as payment, shall be holden not binding on the heirs.
The facts of the case may be found in 6 Ohio, 227, and Wright, 262. It is not necessary for me to repeat any except those which bear upon the present question.
St. Clair died intestate in 1820. In 1822, Lytle, the administrator, filed his petition to sell lands, and in March, 1823, received the requisite authority. In August, 1823, he sold the estate with the usual forms to Arthur St. Clair, jr., one of the heirs, a minor of about twenty years of age, for the sum of fifteen thousand three hundred dollars. This sale was confirmed by the court, but no money was paid nor conveyance made. On November 12, 1823, the administrator and St. Clair, the younger, by a deed, tripartite, conveyed the land to Ben ham, a trustee, in trust to hold the land: 1. To secure the payment of the purchase money ; 2. To liquidate such debts against the estate as the parties might deem expedient; 3. To secure the ultimate resulting proceeds to the Heirs of St. Clair.
On December 8, 1823, Benham, with the assent and authority of Lytle and of the guardian of the children of St. Clair, made the deed now controverted, by which, for certain considerations involving the extinguishment of debts in judgment, and secured by mortgage to the amount of thirty-five thousand and sixty-three dollars, and the advancement of two thousand six hundred and fifty dollars for taxes and other purposes, he conveyed certai n lands, parcel of his said purchase, to the Bank of the United States. Two minor heirs of St. Clair are contesting the validity of this deed by an action of ejectment. If it be holden to confer a good title, the debt which the bank once held against the estate is extinguished by it; but if the deed conveys no title, it is conceded to be ri<>-ht *459 *to set up the debt against the estate, and to satisfy it by a further sale of lands. In adjudicating, therefore, upon the validity of this deed, we decido two cases, viz: the ejectment brought by the heirs, and the point presented by the bank, in Piatt v. Heirs of St. Clair, to obtain satisfaction of its debt under that decree.
The objections preferred to the trustee’s deed are:
1. That it was not made to the purchaser at the sale, but to another person. This objection is removed by a decision of this court, 7 Ohio, 204, where a conveyance to an assignee is held good.
2. That an administrator, exercising a limited and delegated power, to be strictly exercised, has no authority to convey any estate except an absolute fee. If the objection assumes the deed to be void, because it contains no words of perpetuity, it is plain, from the transaction, that the parties contemplated the creation of an entire legal fee simple; and if the power was given, and the execution defective, the mistake will be aided in equity. 2 Ohio, 393; 3 Ib. 529; 4 Ib. 493. But if it be asserted that an administrator can attach no uses to a conveyance of the legal estate, the justice of this position is not recognized. Admitting that, having no interest in the land, he has no power except to convey in fee simple, that he can not, like a donor of an estate held in his own right, prescribe limitations or impose conditions at law, yet the legal title may pass by a conveyance in fee made with the requisite forms to a grantee capable of holding th(-r land. When trusts (which are not recognized except in chancery) are attached to such an estate, they affect the parties to the deed only. Where the power to convey subsists in the administrator and a legal conveyance made in good faith, the ulterior disposition of those acquiring the title can not be questioned by heirs, creditors, and strangers.
3. That the sale was fraudulent. It has been found by the first decree, 6 Ohio, 227, that as the parties designed by that sale to secure advantages to the heirs and certain preferred creditors, at the expense of the others, the general creditors might treat it as void, being against the policy of law insuring equal distribution, and might pursue the land for the satisfaction of debts. We do not doubt the correctness of this decision; we intend to carry it into effect. But the doctrine bearing upon the present case lies behind this, and has been ^discussed but not decided, viz: *460 ■whether the holder of a fraudulent title may not transmit a good, one to a purchaser in good faith for a valuable consideration.
It will be observed that, in this case, the petition, the appraisal, and the order for sale, being the ceremonies instituted by law for the protection of the heirs, were regularly complied with, and conferred the power to sell. If the purchase of the younger St. Clair had been unattended with collusion, the estate of the heirs in these lands would have rightfully passed to him at their price. The illegality of this sale consists not in an intention to injure the heirs, but in an attempt to create a secret trust for their benefit at the expense of creditors, and in an effort to give unjust preferences among creditors themselves. It is right for the injured creditors to avoid the sale. No person aiding or knowing the fraud can be permitted to set it up to prevent an equal distribution among them. But it is good between the parties; for it is made in the forms of law, and liable to be avoided by those only upon whom the fraud is attempted. If, while matters are in this condition, one of the defrauded parties secures his rights, and purchases the land in satisfaction of his just debts, although such a sale may be set aside by creditors, if it prevent an equal distribution, it seems to us good against' the rest of the world. For a fraudulent feoffee may transmit a good title to an honest purchaser for a valuable consideration. His right to convey becomes perfect, by matter ex post facto. 1 Soil. 133; 1 Eras. 92; 18 Johns. 515; Sug. Vend. 11, 198; 1 B. & P. N. R. 332. That this transaction was without actual fraud, or intention to injure the heirs, is plain ; for it was matured by the co-operation of the administrator and young St. Ch.ir, aud the selected trustee and the guardian of the children, all acting in the interests of the family; and it is apparently one of the steps by which the estate was saved from insolvency. The title by a trustee makes no difference; for he had the capacity to hold and transmit it to such a purchaser, in the same manner as St. Clair if he had been of age, and had taken the conveyance to himself.
It is necessary to discriminate between the application of this principle at law, and the equitable doctrine concerning a purchaser for a valuable consideration without notice. The latter emphatically belongs to a court of chancery, is generally used as a de ense, and enables him who holds this character to *assert his legal advantage over equal equities. But where the title *461 of a purchaser in good faith, for a valuable consideration, is relied upon in a court of law, the element of notice has no bearing on the case. If such purchaser have notice of the fraud, the books say he knows it does not affect him. Roberts on Er. Con. 39; Sug. Vend. ed. 1836; 1 Ves. 202; 2 Ves. 51; 1 Atk. 625.
4. That the deed frpm the administrator to Benham contains no words of perpetuity. Admitting that no fee can be created by deed, without the word heirs, this conveyance may pass at least an estate for the life of the trustee, which is still subsisting, and will prevent a recovery in ejectment.
It has been the effort of the court, in the various decrees which they have rendered in this complicated case, to produce such a final settlement and distribution of the estate as would do justice to all parties. The manner in which the bank acquired this property from Benham has been repeatedly examined, and our conclusion is that they took a legal title, in good faith, for what, at that time, was a full-consideration, with the consent of all parties in interest capable of acting, and with the approbation of the guardians of the minors, subject only to the claims of creditors for equal distribution among creditors. It is evident that a conveyance in fee was intended, for “ all the right of A. St. Clair, at the day of his decease held,” is attempted to be conveyed, and the objects of the trust could not be attained without it. If, then, any less estate be conveyed, the suit in chancery, in which all the parties are before us, presents a convenient opportunity to correct the mistake. Without attempting to decide whether' the deed is defective, a decree may be taken, declaring the title of the bank, except it shall be necessary to recur to it for equal distribution and enjoining all persons, parties to this suit, to abstain from molesting their possession, and all further questions are continued.